UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PRAETORIAN INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No.   16 CV 9565 |
| FIRST CLASS GROUP, INC., and AILEEN CHAN, | ) ) ) ) | |
| Defendants. | ) | |

**MOTION FOR REMAND TO ILLINOIS STATE COURT
AND FOR COSTS AND FEES**

Plaintiff Praetorian Insurance Company ("Praetorian"), through its attorneys HeplerBroom, LLC, pursuant to 28 U.S.C. §1447(c), and for its motion to remand and in opposition to the notice of removal, states as follows:

**Introduction**

1. The notice of removal correctly notes that this action was previously removed from the Circuit Court of Cook County, Illinois, in November, 2015. The defendants contended then, as they do again now, that the plaintiff's principal place of business is at its administrative mailing address in Wisconsin, which would create subject matter jurisdiction under 28 U.S.C. §1332.

2. Upon a motion for remand, Judge Manish Shah returned the matter to state court to resolve *via* discovery the plaintiff corporation's citizenship under 28 U.S.C. §1332(c).

3. That discovery has now confirmed that the plaintiff's principal place of business

1

is in New York, where its entire executive team is officed. In fact, defendants' notice of removal raises *even less* of a potential case for the plaintiff corporation's "nerve center" being in Wisconsin than the prior removal effort, which Judge Shah denied.

4. Federal subject-matter jurisdiction does not exist under 29 U.S.C. §1332, and the case must be remanded.

## Pled and Discovered Facts

5. The parties do not dispute that plaintiff Praetorian Insurance Company is a Pennsylvania corporation; or that defendants First Class Group, Inc., and Aileen Chan are citizens (for diversity purposes) of New York. *Exhibit A, Complaint, ¶¶2-3; Notice of Removal, ¶¶2-3.*

6. The sole issue of fact here is the location of Praetorian's principal place of business in 2015.

7. First, Praetorian alleges in its 2015 state-court complaint that its principal place of business is located at 88 Pine Street, New York, New York. *Exhibit A, ¶1.* This address is the corporate headquarters of QBE North America ("QBEN.A."), the North American division of Australia-based QBE Insurance Group, Ltd ("QBE").

Praetorian is one of numerous insurance companies operated by QBEN.A. Praetorian itself has no employees; the personnel who service and run Praetorian (as well as the other QBEN.A. carriers) are all QBE employees. *Exhibit B, deposition of Brendan Malley as Praetorian's corporate representative, pp. 4-5.*

8. The Praetorian corporate representative Brendan Malley testified that every

QBE-employed Praetorian corporate officer and director has at all times maintained his or her office at 88 Pine Street. In particular, and with reference to the 2015 Praetorian Annual Statement, he testified that the following Praetorian executives officed at 88 Pine Street:

- Chief Executive Officer;
- Corporate Secretary;
- Chief Accounting Officer;
- Chief Actuary;
- Treasurer;
- President/Chief Operating Officer;
- Three Executive Vice Presidents;
- Chief Human Resources Officer;
- Chief Legal Officer;
- Chief Risk Officer;
- Controller and the Financial Planning Group;
- Chief Financial Officer; and
- Chief Underwriting Officer.

*Exhibit B, pp. 16-19, 33; Exhibit C, 2015 Praetorian Insurance Company Annual Statement.*

9. The Praetorian Annual Statements themselves were prepared and generated at 88 Pine Street. *Exhibit B, pp. 37.*

3

10. Mr. Malley testified that "all of Praetorian's corporate decisions are made from the 88 Pine [Street] address in New York." *Exhibit B, pp. 35-36.* Examples of those corporate determinations centered in New York would include the decision to purchase another insurance company; open and write coverage in a new market; and all legal decisions. "Anything and everything related to corporate decision making." *Exhibit B, pp. 36.*

11. The Notice of Removal nevertheless suggests the actual principal place of business is in Sun Prairie, Wisconsin, where in 2014 QBEN.A. opened an administrative office to perform the "back office" functions for all of its North American insurance companies, not just Praetorian.

12. With regard to the Sun Prairie office, Mr. Malley detailed the QBEN.A. "back office" functions that moved there from New York. Those include an administrative "mailroom," "most if not all of the IT" and "premium collection people," each functioning on behalf of "all of the QBE North America companies." In fact, the IT functions also support non-QBEN.A. operations "throughout the world" on behalf of other QBE Insurance Group, Ltd., divisions. *Exhibit B, pp. 34-35.*

13. QBEN.A.'s corporate papers were shipped to Wisconsin upon the facility's opening, but the corporate decisions recorded therein remained in New York. For instance, the financial records are kept in Wisconsin and the financial and accounting functions are handled there, but the executives of the Accounting Department remain at 88 Pine Street.

14. In fact, none of the corporate officers listed in the 2015 Annual Statement retain an office in Sun Prairie. Their offices remained after 2014 at 88 Pine Street. *Exhibit B, pp. 36-37.*

15. The highest ranking QBE employees in Sun Prairie are two Senior Vice Presidents – one in legal and in HR. *Exhibit B, p 33.* And although Mr. Malley did not know the number of Senior Vice Presidents at the 88 Pine Street headquarters, he testified, "there's a lot more than two." *Exhibit B, p 35.*

16. Thus, the representative responded to a question from the removing-defendants' own counsel:

> Q. After the main administrative offices were transferred to Sun Prairie sometime in 2014, what functions were performed at 88 Pine Street, if any?
>
> A. All executive decision making. *Exhibit B, p. 13.*

17. Finally, Mr. Malley testified that the Sun Prairie location is just one of approximately 30 other regional QBEN.A. offices that service all of the related insurance companies, not just Praetorian. *Exhibit B, p. 37.*

### Controlling Law and Reasons for Remand

18. In *Hertz Corp. v. Friend*, 559 U.S. 77, (2010), the Supreme Court resolved that a corporation's "principal place of business" would be resolved under the "nerve center" test, and annunciated it this way:

> "Principal place of business" is best read as referring to the place ***where a corporation's officers direct, control, and coordinate the corporation's activities***. It

5

is the place that Courts of Appeals have called the corporation's "nerve center." And in practice it should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the "nerve center," and not simply an office where the corporation holds its board meetings... .

    *Id.*, at 92-93. (***emphasis added***)

19. Even before the *Hertz Corp.* decision, the Seventh Circuit followed the "nerve center" approach to corporate citizenship: "a corporation has a single place of business where its executive headquarters are located." *Metropolitan Life Ins. Co. v. Estate of Cammon*, 929 F.2d 1220, 1223 (1991). This Circuit has long considered §1332's reference to a corporation's principal place of business to be its "center of corporate activity and never center." *Celanese Corp. of America v. Vandalia Warehouse Corp.*, 424 F.2d 1176, 1178 (1970).

20. Thus, under the "nerve center" approach, courts focus on the factors "that identify the place where the corporation's policies originate." *Utopia Studios, Ltd. v. Earth Tech, Inc.*, 607 F.Supp.2d 443, 445 (E.D. N.Y. 2009).

21. Mr. Malley's corporate representative testimony confirms that all corporate activity and executive decisions and leadership takes place at 88 Pine Street in New York. All corporate leadership is officed there.

22. The Sun Prairie, Wisconsin, regional office has no such executive leadership, decision-making or corporate activity. Only functional aspects of the insurance

6

companies are performed in Sun Prairie – IT, administrative mailings, premium collection – but such "back office" operations do not remotely qualify "as the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp.*, 559 U.S. at 92. The defendants' suggestion in the Notice of Removal otherwise is specious, at best.

23. The defendants conclusively suggest that simply because Praetorian has no employees, "the principal place of business must be found where its books, records and administrative functions are located." *Notice of Removal*, ¶11. The conclusion is wholly unsupported by legal citation, and ignores the *Hertz Corp.* decision's focus on the singular location where the ***corporate officers "direct, control, and coordinate the corporation's activities."*** The "nerve center" approach focuses on where the corporation maintains its headquarters, its "main, prominent or leading place" of corporate governance, and abandons the mere counting of employees or the determination of where the corporation's most-important plant might be located. *Hertz Corp.*, 559 U.S. at 93.

24. Thus, even if the "back office" functions at Sun Prairie constitutes the "bulk of Praetorian's business activities visible to the public,"[1] as long as its "top officers direct those activities" from New York, the principal place of business is in New York. The *Hertz Corp.* decision gives that *exact* scenario as an example of the supremacy of

---

[1] A conclusion not necessarily borne out by the discovery here, which establishes that Sun Prairie is just one of 30 QBEN.A. regional offices.

7

corporate governance over the efforts to weigh corporate functions, assets, or locations in a principal place of business analysis. 559 U.S. at 96.

25. Finally, the Notice of Removal conflates Praetorian's alleged lack of a "registration to do business" in New York with the "nerve center" test. *Notice of Removal,* ¶¶*14-16*. Again, without the benefit of a supporting citation of law, this argument is revealed to be a last gasp that ignores the discovered facts of where all of Praetorian's corporate officers keep their offices – in New York.

### Prayer for Fees

26. Judge Shah sent the matter back to Illinois state court where the defendants were able to take the discovery they wanted to resolve the principal place of business fact issues. By all legally measurable analysis, that discovery revealed that Praetorian's "nerve center" is at its singular corporate headquarters, where all of its corporate officers maintain their offices, at 88 Pine Street, New York, New York – facts even better known now to the defendants since they were first established in the first removal effort.

27. Yet since the prior remand, Praetorian's action against the defendants has been delayed by the production of thousands of pages of corporate documents, and a trip to New York to conduct the corporate representative deposition, all at great costs to Praetorian, simply to establish with this greater specificity that Praetorian's nerve center is at 88 Pine Street.

28. Mr. Malley provided the clearest testimony possible establishing New York as

8

the place where Praetorian's "officers direct, control, and coordinate the corporation's activities." There is no dispute about any of those facts. Yet the defendants nevertheless filed the renewed Notice just the second available date after his deposition, exposing that they had every intention to file another Notice regardless of what the deposition testimony established; they would create unsupported conclusory arguments to once again seek removal and continue the delay of Praetorian's state court action against them.

29. The defendants' willful misreading of the "never center" test, done with utter disregard for the clear testimony of the Praetorian corporate representative on the location of its corporate leadership, warrants the imposition of just costs and any actual expenses, including attorney fees, incurred as a result of the improper removal, pursuant to 28 U.S.C. 1447(c). *See, MB Financial, N.A. v. Stevens*, 678 F.3d 497, 498 (7th Cir. 2012), holding an award of attorney fees is appropriate when the removal was "unreasonable;" *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005), holding that absent an "objectively reasonable basis for removal," attorney fees should be awarded.

30. The defendants come before this court not only with the exact same assertion that Praetorian's principal place of business is at its administrative mailing address in Wisconsin, but this time make that assertion despite having gained through discovery conclusive, unchallenged evidence that Praetorian's "center of corporate activity and never center," *Celanese Corp., supra,* and "the place where a corporation's officers direct, control, and coordinate the corporation's activities," *Hertz, supra*, are in

New York. Such behavior warrants the imposition of costs and fees. *See, Chase v. Shop & Save Warehouse Foods, Inc.*, 110 F.3d 424, 431 (7th Cir. 1997), affirming a Rule 11 sanction for a party's repeated motions for remand despite the party offering no new evidence on the purported diversity-jurisdiction fact question, "leaving the same court to rule on the same motion with the same facts and same removal standard." Here, the defendants filed a renewed Notice of Removal when the facts were even less likely to establish jurisdiction than the first effort.

WHEREFORE, Praetorian Insurance Company respectfully requests an order remanding the case to the Circuit Court of Cook County, Illinois; for the costs and attorney fees for this motion; and any further relief that this Court deems just.

Respectfully submitted,

By: /s/ Anthony J. Tunney

Anthony J. Tunney
Robert E. Elworth (IL Bar 6217283)
HeplerBroom, LLC
30 North LaSalle Street, Suite 2900
Chicago, Illinois 60602
(312) 230-9100

Attorneys for Plaintiff Praetorian Insurance Company

10