# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PRAETORIAN INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | ) Case No. 16-cv-9565<br>) |
| v. | ) Judge Robert M. Dow, Jr.<br>) |
| FIRST CLASS GROUP, INC. and, AILEEN CHAN, | )<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Praetorian Insurance Company's motion to remand [9] this case to the Circuit Court of Cook County, Illinois pursuant to 28 U.S.C. § 1447(c) for lack of federal diversity jurisdiction. For the reasons stated below, Plaintiffs' motion to remand is granted.

**I.  Background**

On or around March 1, 2001, Plaintiff and Defendant First Class Group, Inc. ("First Class") entered into a Program Administrator Agreement ("PAA") by which First Class was to solicit, underwrite, and bind Plaintiff's commercial business insurance policies and to collect and remit net premiums to Plaintiff. On October 7, 2015, Plaintiff filed a complaint against First Class and Aileen Chan, the president and owner of First Class, in the Circuit Court of Cook County for breach of the PAA, breach of fiduciary duty, conversion, fraud, an accounting of First Class's deposits into and disbursements from its premium and other accounts, and other state and common law causes of action.

On November 16, 2015, Chan removed the lawsuit to this Court. See [2-2] (Notice of Removal in *Praetorian Ins. Co. v. First Class Group, Inc.*, No. 15-cv-10357 (N.D. Ill.)).

Plaintiff moved to remand, and Judge Shah granted the motion, finding that Defendants' filings did not establish a reasonable probability of diversity of citizenship and that Defendants, through statements that discovery on citizenship may be required, had conceded that they did not have an adequate basis for removal at that time. See [2-3] at 3-4. After conducting discovery in state court, Defendants filed a second notice of removal to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332 and 1446(a) on October 6, 2016. See [2].

Plaintiff again has moved to remand the case. Plaintiff does not challenge the timeliness of the notice of removal[1] or that the amount in controversy exceeds $75,000. In addition, the parties do not dispute that Plaintiff's state of incorporation is Pennsylvania or that Defendants are both citizens of New York. Plaintiff seeks remand on the basis that it has its principal place of business in New York, thereby defeating any claim of complete diversity between the parties. In response, Defendants argue that jurisdiction-related discovery supports the conclusion that Plaintiff's principal place of business is located in Wisconsin.

## II. Legal Standard

"The federal removal statute permits a defendant to remove a civil action from state court when a district court has original jurisdiction over the action." *Micrometl Corp. v. Tranzact Techs., Inc.*, 656 F.3d 467, 470 (7th Cir. 2011) (citing 28 U.S.C. § 1441(a)). In this case, Defendants assert that the Court has jurisdiction based on diversity of citizenship. See 28 U.S.C. § 1332(a). In order for jurisdiction to be founded on diversity of citizenship, there must be complete diversity of citizenship—*i.e.*, no plaintiff can be a citizen of the same state as any defendant. See *LM Ins. Corp. v. Spaulding Enters. Inc.*, 533 F.3d 542, 546 n.1 (7th Cir. 2008) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)). For cases that reach the federal

---

[1] 28 U.S.C. § 1446(c)(1) states that a case may not be removed on the basis of jurisdiction conferred by section 1332 more than one year after the commencement of the action, with the exception of a specific situation not applicable here.

court by removal, diversity must exist both at the time of the original filing in state court and at the time of removal. *Altom Transp., Inc. v. Westchester Fire Ins. Co.*, 823 F.3d 416, 420 (7th Cir. 2016). The Court considers the entire record in evaluating the existence of diversity jurisdiction. See *Harmon v. OKI Sys.*, 115 F.3d 477, 479-80 (7th Cir. 1997).

For the purpose of determining citizenship, a corporation is a citizen of "any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c). The Supreme Court has interpreted the phrase "principal place of business" to mean the place where a corporation's officers direct, control, and coordinate the corporation's activities. *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). In practice, this "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center.'" *Id.*; see also *Wis. Knife Works v. Nat'l Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986). A corporation's nerve center is where its "brain" is—that is, the principal place of corporate management. *Wis. Knife Works*, 781 F.2d. at 1282; see *Chamberlain Mfg. Corp. v. Maremont Corp.*, 828 F. Supp. 589, 592 (N.D. Ill. 1993) (factors which deal with the brains of the organization should be considered for the "nerve center" test and factors dealing with "day-to-day operating responsibilities" should be disregarded). The burden of persuasion for establishing diversity jurisdiction is on the party who asserts jurisdiction, and that party must support its jurisdictional allegations with "competent proof." *Hertz Corp.*, 559 U.S. at 96-97; see *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 404 (7th Cir. 2004) (a removing defendant must demonstrate "reasonable probability that subject-matter jurisdiction exists"). Thus, the removing Defendants bear the burden in this case.

In deciding whether to remand a case, the Court assumes the truth of the factual allegations of the complaint. *Sheridan v. Flynn*, 2003 WL 22282378, at *3 (N.D. Ill. Sept. 30,

2003). Further, a plaintiff's choice of forum is presumed valid, and the Court must resolve any doubts about jurisdiction in favor of remand. See, *e.g., Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009); *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993) ("Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum"); *Schmude v. Sheahan*, 198 F. Supp. 2d 964, 966 (N.D. Ill. 2002) ("Generally, the removal statute is strictly construed, with an eye towards limiting federal jurisdiction").

## III. Analysis

### A. Praetorian's Principal Place of Business

In this case, Plaintiff's state court complaint alleges that its principal place of business is at 88 Pine Street, New York, New York. See [2-1] at ¶ 1. Defendants have also submitted the transcript and exhibits from the October 2016 deposition of Plaintiff's corporate representative, who was designated to have knowledge about its principal place of business. See [2-4]. The following facts are taken from the deposition.

Plaintiff is an insurance company owned by QBE North America ("QBE"), and Plaintiff maintains an office in New York at the Pine Street address. *Id*. at 2-3.[2] Although Plaintiff does not have any employees, it has officers and directors, who typically also serve as officers and directors of QBE. *Id*. at 2, 4-6. Plaintiff's President, Chief Executive Officer, Chief Actuary, Chief Human Resources Officer, Chief Operating Officer, Chief Accounting Officer, Treasurer, Executive Vice Presidents and others all had their offices in New York at the Pine Street address in 2015 and they continued to do so as of the date of the deposition. *Id*. at 4-6. Non-independent directors and trustees also had offices there. *Id*. at 6.

---

[2] The deposition transcript and exhibits were submitted together as one exhibit [2-4]. Accordingly, the citations herein are to the full pages of the exhibit as filed, not to the particular pages of the condensed deposition transcript.

A 2013 annual statement designated the Pine Street location as Plaintiff's "administrative office"; annual statements from 2014 and 2015 instead list an address in Sun Prairie, Wisconsin as Plaintiff's "main administrative office," "mail address," and the "primary location of books and records." *Id*. at 3-4, 39-41. This change in designation occurred because Plaintiff's "back office" functions were moved to Wisconsin in 2014. *Id*. at 3. Specifically, QBE's, Plaintiff's, and other QBE-owned companies' books and records (including financial records) were transferred from New York to Wisconsin at this time, as well as an "overwhelming majority of the finance and accounting," mail, and information security and technology functions. *Id*. at 8-10. All "executive decisionmaking," however, was and is performed in New York at the Pine Street office, such as all decisions with legal implications, decisions to open and write coverage in new markets, and decisions to sell a company, for example. *Id*. at 4, 10. Only two Senior Vice Presidents are located in Wisconsin. *Id*. at 10.

In light of this testimony, Defendants argue that Plaintiff's principal place of business is in Wisconsin for the following reasons. First, the annual statements and other documents they have located (including an A.M. Best Rating Services website printout, Internet webpages, and information pulled from the department of insurance websites of "several states") indicate that Plaintiff's main administrative office is in Wisconsin. See *id*. at 35-37, 39-45. Second, because Plaintiff does not have any employees to speak of, its nerve center must be where its records are kept and where a significant amount of its operations take place—in Wisconsin. Third, Defendants also argue that Plaintiff has not set forth sufficient evidence to demonstrate that its corporate decisionmaking occurs in New York.

Under the facts presented, the Court finds that Defendants have failed to carry their burden of proving federal jurisdiction for several reasons. As an initial matter, the Court

5

assumes, as it must at this stage, that the factual allegations in Plaintiff's original complaint are true, and Plaintiff's state court complaint specifically alleges that its principal place of business is in New York. *Sheridan*, 2003 WL 22282378, at *3. Even if the Court were to disregard this allegation, it is not persuaded by Defendants' arguments in favor of finding that Wisconsin is Plaintiff's principal place of business.

*Hertz* directs that a corporation's principal place of business is where its officers direct, control, and coordinate its activities. *Hertz Corp.*, 559 U.S. at 93. Here, Plaintiff has offered uncontroverted deposition testimony that most, if not all, of its officers and directors work out of its New York office and that all of the decisionmaking that directs Plaintiff's insurance activities takes place there. Put differently, New York is where Plaintiff's "brain" is located. The fact that Plaintiff's annual statements and certain other Internet documents list Plaintiff's "main administrative office" in Wisconsin cannot overcome that testimony, not only because all doubts must be resolved in favor of remand (*Schur*, 577 F.3d at 758), but also because *Hertz* rejected an even more compelling version of that logic. There, the Supreme Court stated that merely filing a government form listing a corporation's "principal executive office" would not be sufficient proof, without more, to establish a corporation's "nerve center." See *Hertz Corp.*, 559 U.S. at 97. Forms and other Internet documents thus are not determinative of where Plaintiff's nerve center is located, and moreover a reference to an "administrative office" does not, in and of itself, indicate that executive decisionmaking occurs there.

Further, the fact that Plaintiff's records are kept in Wisconsin and that certain administrative functions—significant or not—are performed there similarly is not conclusive on this issue, where the test looks to where a corporation's top officers direct its activities, not necessarily where the bulk of a corporation's publicly visible activities take place. *Id*. at 96.

Defendants argue that the records and activities in Wisconsin are determinative in this situation, pointing to Plaintiff's lack of employees. But this argument ignores the deposition testimony that Plaintiff has officers and directors who make corporate decisions in New York. In similar situations, courts have located the nerve center of a holding company by looking to the location in which its officers or directors meet to make high-level management decisions—not simply where corporate books are records are located. See, *e.g.*, *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 356 (3d Cir. 2013) (holding company's nerve center is where board of directors meet to make ownership decisions); *Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 105-07 (4th Cir. 2011) (nerve center of holding company is where high-level officers work, make decisions, and set policy, regardless of the fact that they do so from the building of the corporate parent or that they are also engaged in affiliated companies' business); *Lewis v. Lycoming*, 2012 WL 2422451, at *5 (E.D. Pa. June 27, 2012) (holding company's nerve center is the place where its officers make major business decisions, not the location of its "public persona"). More appropriately, the "back-office" functions that take place in Wisconsin are part of Plaintiff's day-to-day operations, or its metaphorical "body," and thus are not pertinent to the nerve-center test. See *Chamberlain Mfg. Corp.*, 828 F. Supp. at 592.

Plaintiff cites *CPS Timberlands, LLC v. Chesapeake La., LP*, 2016 WL 4004867 (W.D. La. May 10, 2016), *report and recommendation adopted by* 2016 WL 4004867 (W.D. La. July 25, 2016). There, the court held that a removing defendant had proved that its own principal place of business was in Arizona where it submitted a sworn statement that its corporate office and headquarters was in Arizona, its very few corporate activities were carried out by officers and employees in Arizona, and its corporate records were stored there as well. *Id*. at *4. The court further concluded that evidence that the removing defendant had a significant number of

7

officers in Texas and other connections to that state (including having principal business offices there, as designated on administrative filings) was insufficient to sustain remand. Notably, there was no evidence in that case that the officers located in Texas did anything to direct corporate activities. *Id*. at *3. It appears that the evidence in favor of diversity produced by the removing defendant in *CPS Timberlands*—who was in the posture of proving its own nerve center, not disproving the nerve center of its opponent—was much more competent and certain than the record shows here. Based on what is before this Court, it reaches a different conclusion.

Defendants also argue that Plaintiff has not set forth enough evidence for the Court to find that Plaintiff's nerve center is in New York, but this argument misses the mark because it is Defendants, not Plaintiff, who bear the burden of persuading the Court that diversity jurisdiction exists. In any event, Defendants' attempts to call into question the degree of decisionmaking that takes place in New York again do nothing more than cast shades of suspicion that are easily resolved in Plaintiff's favor.[3] Despite having conducted months of discovery on the issue of jurisdiction, Defendants have failed to prove that diversity jurisdiction is reasonably probable in this case. *Schimmer*, 384 F.3d at 404.

As a final point, the Court notes that *Hertz* warned courts to guard against jurisdictional manipulation by ensuring that a corporation's headquarters is actually its center of direction, "not simply an office where the corporation holds its board meetings" (*Hertz Corp.*, 559 U.S. at 93), or "nothing more than a mail drop box, a bare office with a computer, or the location of an

---

[3] Specifically, Defendants' argument that "some" decisionmaking "*must* have taken place in Wisconsin" because three corporate signatories on Plaintiff's 2015 annual statement signed the document in Wisconsin is unconvincing. See [13] at 4 (emphasis in original). Similarly, Defendants' argument that their research indicates that Plaintiff's then-CEO resided in Exton, Pennsylvania in 2015 cannot overcome Plaintiff's allegations and evidence that its corporate decisions were made in New York. *Id*. Both arguments ignore modern means of travel and imply that corporate decisionmaking must take place on every day of the year and in only one location to satisfy the nerve center test. The Court does not agree with Defendants' premise, nor does it find that their arguments undermine Plaintiff's evidence for purposes of this analysis.

8

annual executive retreat" (*id*. at 97). Nothing in the record here suggests that Plaintiff's New York nerve center is a jurisdictional fabrication. To the contrary, the evidence in the record, viewed with the understanding that the removal statute is interpreted narrowly and in favor of remand, points to the conclusion that Plaintiff's principal place of business is in New York. *Id*. at 96 (the "nerve center" test "points courts in a single direction, towards the center of overall direction, control, and coordination"). Therefore, complete diversity of citizenship does not exist, and removal of the action to this Court was improper.

**B.     Costs**

The next issue to consider is whether Defendants should be ordered to pay Plaintiff's fees in connection with their (second) wrongful removal. 28 U.S.C. § 1447(c) permits a district court to require payment of costs as part of its remand order. See *Martin v. Franklin Capital Corp*., 546 U.S. 132, 138 (2005). The Supreme Court has held that Section 1447(c) imposes neither a bias in favor of remand fee awards nor a strong presumption against such awards: "The statutory language and context strike us as more evenly balanced * * *; we see nothing to persuade us that fees under § 1447(c) should either usually be granted or usually be denied." *Id.* 138-39.

In general, "if, at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal, then a district court should award a plaintiff his attorneys' fees." *Lott v. Pfizer, Inc*., 492 F.3d 789, 793 (7th Cir. 2007); see also *PNC Bank, N.A. v. Spencer*, 763 F.3d 650, 654 (7th Cir. 2014) (per curiam) (affirming award of fees and costs to plaintiff where there was no objectively reasonable basis for federal jurisdiction or removal); *Garbie v. DaimlerChrysler Corp*., 211 F.3d 407, 410 (7th Cir. 2000) (affirming award of fees and costs where "[r]emoval was unjustified under settled law."). The decision to award costs and fees rests within the district court's discretion. *Martin*, 546 U.S. at 137-39.

9

At this time, the Court declines to find that clearly established law demonstrated that Defendants had no basis for removal, and accordingly, the Court declines to require Defendants to pay Plaintiff's costs and expenses.  Even so, the Court notes that Defendants' support for its second notice of removal is rather thin, especially considering that Defendants bear the burden of persuading the Court that it has jurisdiction over this matter.  In making their arguments, Defendants conclusorily discredit the deposition testimony and complaint allegations pointing to New York as Plaintiff's nerve center and instead rely on less persuasive evidence in order to make their motion before the one-year cut-off.  Defendants' arguments based on that evidence were rejected by Judge Shah and they are rejected here, as they are in conflict with the directives of *Hertz*.

**IV. Conclusion**

For the foregoing reasons, Plaintiffs' motion to remand [9] this case is granted, and the Court remands this case to the Circuit Court of Cook County, Illinois for further proceedings

Dated: May 18, 2017

_____
Robert M. Dow, Jr.
United States District Judge